UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Robert Rosenthal | | Nicole Daro |

**Proceedings:**   DEFENDANT'S MOTION FOR ATTORNEYS' FEES (Dkt. #32, filed August 8, 2014)

## I.   INTRODUCTION

Plaintiff Hospital of Barstow filed this action on June 13, 2013, against defendant California Nurses Association/National Nurses Organizing Committee. The underlying litigation arises from disputes between plaintiff, a hospital, and defendant, the union certified by the NLRB as the representative of registered nurses employed by plaintiff. Plaintiff filed its lawsuit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, *et seq.* Plaintiff filed a first amended complaint ("FAC") on July 2, 2013. Dkt. #7. Defendant filed a motion to dismiss the FAC pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on July 26, 2013. By order dated August 26, 2013, the Court granted defendant's motion to dismiss. Dkt. #16. Plaintiff filed a second amended complaint ("SAC") on September 26, 2013, seeking damages, specific performance, and declaratory relief under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185(a), arising from an alleged breach of an oral collective bargaining agreement. Dkt. #19. By order dated November 18, 2013, the Court granted defendant's motion to dismiss the SAC with prejudice. Dkt. #24. Plaintiff appealed the dismissal of the SAC to the Ninth Circuit on December 18, 2013. Dkt. #25. On July 2, 2014, the Ninth Circuit granted the parties' motion to voluntarily dismiss the appeal. Dkt. #29. On July 23, 2014, defendant lodged a proposed entry of judgment with the Court. Dkt. #30. On July 25, 2014, the Court entered judgment for defendant. Dkt. #31.

On August 8, 2014, defendant filed a motion for attorneys' fees. Dkt. #32. This motion seeks attorneys' fees as a sanction pursuant to the Court's inherent powers and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

under 28 U.S.C. § 1927. Id. Plaintiff filed an opposition to the motion on August 25, 2014. Dkt. #33. Defendant replied on September 2, 2014. Dkt. #35. After considering the parties' arguments, the Court finds and concludes as follows.

## II.    BACKGROUND

Plaintiff operates an acute care hospital in Barstow, California. SAC ¶ 5. Defendant is a labor organization with its principal place of business in Oakland, California. Id. ¶ 6. On June 29, 2012, the National Labor Relations Board ("NLRB") certified defendant as the exclusive collective bargaining representative of the registered nurses employed by plaintiff. Id. ¶ 7.[1]

### A.    Litigation in This Court

In its now-dismissed action, plaintiff alleged that, prior to certification, representatives of defendant entered into an oral collective bargaining agreement with plaintiff. Id. ¶¶ 15, 18-20. Plaintiff also claimed that, on or about April 12, 2012, the parties communicated regarding defendant's service on plaintiff of a notice of intent to organize. Id. ¶¶ 21-23. Plaintiff alleged that these communications included a telephone conversation between Don Carmody ("Carmody") and Jane Lawhon ("Lawhon"), one of defendant's attorneys. Id. ¶ 24. Plaintiff contended that, during that telephone conversation, Carmody proposed to Lawhon that the parties orally agree to the terms contained in the most recent draft of the proposed labor relations agreement with regard to several items. Id. ¶ 25. Plaintiff claimed that Lawhon agreed to this proposal. Id. ¶ 39. Plaintiff also alleged a course of conduct by defendant that, according to plaintiff, served to ratify the oral collective bargaining agreement. Id. ¶¶ 31-32. Finally, plaintiff claimed that defendant breached the alleged oral agreement by refusing to negotiate pursuant to its standards and filing unfair labor practice ("ULP") charges with the NLRB instead of submitting the disputes to arbitration under the purported agreement.

---

[1] More comprehensive factual information is set forth in the Court's orders granting defendant's motions to dismiss Barstow's FAC, Dkt. #16, and SAC, Dkt. #24.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

In its November 18, 2013 order, the Court granted defendant's motion to dismiss the SAC with prejudice. Dkt. #24. The Court noted that no case law supported the proposition that parties may enter into an oral collective bargaining agreement, but relied on other grounds in finding that plaintiff had failed to state a claim for breach of the alleged oral agreement. Id. at 7. First, the Court concluded that the SAC failed to allege that the parties agreed to submit their charges to arbitration or that defendant waived its right to file ULP charges with the NLRB. Id. In so concluding, the Court reasoned that plaintiff based its contention that the parties had agreed to arbitrate any disputes on the terms of a *proposed* agreement that had not been executed. Id. at 8. The Court also found that allegations that defendant had submitted some disputes to arbitration were insufficient to support a contention that defendant waived its right to *ever* bring ULP charges before the NLRB. Second, the Court found that even if the SAC contained allegations of a waiver of defendant's right to file ULP charges, such a waiver would be unenforceable under the National Labor Relations Act. Id. at 9-11. Finally, the Court concluded that dismissal with prejudice was appropriate. The court reasoned that the SAC "suffers from the same deficiency as the FAC, namely, that it lacks factual allegations supporting plaintiff's contention that the parties orally agreed to arbitrate all disputes" and that amendment would be futile because any waiver plaintiff could allege would be unenforceable. Id. at 13.

### B. Unfair Labor Practice Proceedings Before the NLRB

As mentioned above, plaintiff's claims were based largely on defendant's filing ULP charges with the NLRB instead of submitting the disputes to arbitration under the purported agreement. Two of these charges were the subject of an administrative law judge ("ALJ") decision adverse to plaintiff. See Hosp. of Barstow, Inc. ("ALJ Hearing"), JD(SF)-41-13, 2013 WL 4835039 (Sept. 9, 2013), adopted as modified by Hospital of Barstow, Inc. ("NLRB Order"), 361 N.L.R.B. No. 34 (Aug. 29, 2014). The ALJ ruled against defendants, on September 9, 2013, finding no agreement to arbitrate, oral or otherwise. See ALJ Hearing, 2013 WL 4835039. The NLRB affirmed that decision on August 29, 2014. See NLRB Order, 361 N.L.R.B. No. 34, at *1 n.3 ("The parties have no collective-bargaining agreement setting forth an agreed-upon grievance-arbitration procedure.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

## III. ANALYSIS

### A. The Timeliness of Defendant's Motion

Before turning to the merits of defendant's motion, the Court addresses plaintiff's argument that defendant's motion is untimely. Plaintiff cites this Court's Local Rule 54-10, which provides: "Any motion or application for attorneys' fees shall be served and filed within fourteen (14) days after the entry of judgment or other final order, unless otherwise ordered by the Court. Such motions and their dispositions shall be governed by L.R. 7-3, *et seq.*" Plaintiff argues that the Court's minute order entered on November 18, 2013 constitutes a final order within the meaning of L.R. 54-10 because (1) it concludes "IT IS SO ORDERED," (2) it was signed by the deputy clerk, (3) it was electronically mailed to all counsel, (4) the Court entered it as an "Order" on its Docket Report, and (5) the Docket Report states "WARNING: CASE CLOSED on 11/18/13." Pl. Response at 12. Plaintiff cites cases to the effect that such a minute order can constitute a "final order" under federal rules of civil and appellate procedure. Therefore, plaintiff argues, defendant had until December 2, 2013, to file a motion for attorneys' fees–a deadline defendant missed by several months.

Defendant responds with several arguments. First, defendant stresses that Local Rule 54-10 is phrased in the disjunctive, starting the clock for filing of an attorneys' fees motion within fourteen days "after the entry of judgment *or* other final order." Next, defendant cites Local Rule 58-6, which states that "[n]otation in the civil docket of entry of a memorandum of decision, an opinion of the Court, or a minute order of the Clerk shall not constitute entry of judgment pursuant to F.R. Civ. P. 58 and 79(a) unless specifically ordered by the judge." Because the Court did not specifically order that the minute order constituted entry of judgment, defendant argues, the filing clock did not start until July 25. Finally, defendant argues that plaintiff's cited cases are inapplicable because they interpret different procedural rules and concern deadlines for the taking of appeals, not the filing of attorneys' fees motions.

The Court is not convinced that the November 18, 2013 order did not trigger the timing clock under Local Rule 54. Because the Local Rules incorporate and supplement the Federal Rules, and because little case law exists interpreting the Local Rules, the Court takes as instructive cases interpreting the Federal Rules. Authorities interpreting

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
|---|---|---|---|
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

Fed. R. Civ. P. 54 confirm the applicability of its definition of "judgment" as "including any order from which an appeal lies." Fed. R. Civ. P. 54(a). The U.S. Court of Appeals for the District of Columbia explained in analyzing the timeliness of a motion for attorneys' fees that Rule 54 "posits a relationship between a judgment and its appealability." Castro County v. Crespin, 101 F.3d 121, 128 (D.C. Cir. 1996). That court cited the Advisory Committee's commentary that "[o]ne purpose of this provision is to assure that the opposing party is informed of the claim before the time for appeal has elapsed." Id. (citing Fed. R. Civ. P. 54 advisory committee's notes (1993 Amendments)). See also Pavlovich v. Nat'l City Bank, 461 F.3d 832, 836 (6th Cir. 2006) ("Fed. R. Civ. P. 54(d)(2)(B) provides that [an attorney's fee] motion 'must be filed no later than 14 days after entry of judgment.' Rule 54 defines 'judgment' as including 'any order from which an appeal lies.'"); Sakon v. Andreo, 119 F.3d 109, 113 (2d Cir. 1997) ("Rule 54 as a whole deals with 'judgment[s], which it defines as decisions that are appealable. Rule 54(d) allows claims for attorneys' fees . . . to be made by motion within 14 days after entry of the 'judgment.'" (citations omitted)). Here, the November 18 order was clearly appealable; in fact, plaintiff *did* appeal the order to the Ninth Circuit. And it does not appear the circuit courts have drawn defendant's suggested distinction between "final judgments" for purposes of appeals and fee motions.

     Nevertheless, the date of filing does not bar consideration of defendant's motion. Fed. R. Civ. P. 54 excludes from its timing provisions "claims for fees and expenses . . . as sanctions under 28 U.S.C. § 1927." Fed. R. Civ. P. 54(d)(2)(E). There is no indication that the Local Rules were intended to do away with this clear exception, even assuming they could. Moreover, both the Federal and Local Rules give district courts discretion to alter the timeline. See Fed. R. Civ. P. 54(d)(2)(B) ("Unless a statute or a court order provides otherwise, the motion must be filed no later than 14 days after entry of judgment."); L.R. 54-10 (stating that the motion shall be filed within fourteen days "unless otherwise ordered by the Court."). Finally, to the extent defendant's motion is based on the Court's inherent powers to police itself, the Supreme Court has made clear that district courts have broad latitude to sanction bad faith litigation conduct even if sanctions would not be permitted by statute or the Federal Rules. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 50 (1991). Therefore, the Court turns to the merits of defendant's motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

### B. Whether Sanctions Are Appropriate

28 U.S.C. § 1927 provides that any "attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute "applies only to unnecessary filings and tactics once a lawsuit has begun." In re Keegan Mgmt. Co., Securities Litig., 78 F.3d 431, 435 (9th Cir. 1996).

Before § 1927 sanctions can be imposed, the court must make a finding of subjective bad faith, not simply objectively unreasonable behavior. Salstrom v. Citicorp Credit Services, Inc., 74 F.3d 183, 184 (9th Cir.1996). "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." In re Keegan Mgmt. Co., 78 F.3d at 436 (quoting Estate of Blas v. Winkler, 792 F.2d 858, 860 (9th Cir.1986)). Put differently, "[f]or sanctions to apply, if a filing is submitted recklessly, it must be frivolous, while if it is not frivolous, it must be intended to harass." Id. at 436.

The decision to sanction a party under § 1927 rests in the sound discretion of the district court. See, e.g., Trulis v. Barton, 107 F.3d 685, 694 (9th Cir.1996) (finding that the district court abused its discretion by not awarding § 1927 sanctions); MGIC Indemnity Corp. v. Moore, 952 F.2d 1120, 1121 (9th Cir.1991) (holding that the district court abused its discretion by awarding § 1927 sanctions). As with sanctions awarded pursuant to the court's inherent powers, § 1927 sanctions must be tailored to the particular conduct challenged. See, e.g., Blodgett, 709 F.2d at 610–11 ("Section 1927 only authorizes the taxing of excess costs arising from an attorney's unreasonable and vexatious conduct; it does not authorize imposition of sanctions in excess of costs reasonably incurred because of such conduct.").

Similarly, the Ninth Circuit has emphasized that the level of misconduct required before it is appropriate to impose sanctions under the court's inherent authority must meet "a high threshold." Mendez v. County of San Bernardino, 540 F.3d 1109, 1132 (9th Cir.2008) (citing Primus Automotive Financial Services, Inc. v. Batarse, 115 F.3d 644, 649 (9th Cir.1997)). "Even in a case where the district court described a litigant's arguments as 'totally frivolous,' 'outrageous' and 'inexcusable' and called his behavior

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

'appalling,' [the Ninth Circuit] nonetheless refused to equate this characterization of conduct as synonymous with a finding of bad faith." Id.  Like an award of sanctions under § 1927, whether to impose sanctions pursuant to the court's inherent authority is left to the court's sound discretion.  See Del Nero v. Midland Credit Management, No. CV 04–1040 ABC (SHx), 2010 WL 1227453, *2 (C.D.Cal. Mar.30, 2010) ("'Because of their very potency, inherent powers must be exercised with restraint and discretion.'" (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991))).

Defendant argues (1) that plaintiff's litigation of the claim that the parties entered into an oral agreement was brought in bad faith and supported by two wholly or partially fabricated telephone conversations; and (2) that plaintiff's briefing on a motion to dismiss deliberately misrepresented the nature of defendant's ULP charges before the NLRB.  The Court finds that defendant has not presented clear evidence of the subjective bad faith necessary to merit sanctions under the high standards described above.

> 1. Alleged Bad Faith Claims that the Parties Entered into an Oral Agreement

Defendant's central contention is that plaintiff pursued in bad faith a claim that the parties agreed to an oral collective bargaining agreement.  Defendant points to two alleged fabrications in particular.

> > a. The Allegedly Fabricated April 12, 2012 Telephone Conversation in Which Plaintiff Claims Defendant's Attorney Entered into the Purported Oral Agreement

Defendant argues that plaintiff's bad faith in alleging an oral agreement is apparent from representations regarding the alleged April 12, 2012 conversation between Carmody and Lawhon.  The original complaint and FAC alleged that the parties entered into an agreement in April 2012 and that defendant began organizing "[o]n or about April 12, 2012," but did not mention Daro or any telephone call.  Compl. ¶ 12-13; FAC ¶¶ 13-14.  The SAC specifically alleged an oral agreement, see SAC ¶ 2, and a telephone conversation between Carmody and Lawhon on April 12, 2012, id. ¶ 23.  The SAC further alleged that, during the April 12, 2012 conversation, Carmody "proposed to Ms. Lawhon that the Parties should simply orally agree to apply the terms memorialized in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL** 'O'

| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
|---|---|---|---|
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

the most recent written draft copy of the Proposed [Labor Relations Agreement] with respect to" several provisions. Id. ¶ 25. The complaint claimed that "Lawhon said that Mr. Carmody's proposal made sense and she agreed to his proposal." Id.

In support of this motion, Lawhon submitted a declaration in which she denies ever having a telephone conversation with Carmody during which she agreed that defendant would enter into an oral agreement with plaintiff. See Lawhon Decl. ¶ 5. Lawhon declares that her telephone conversations with Carmody were limited to details of the organizing campaign at defendant hospital, and that she and Carmody "never discussed the negotiation of an initial collective bargaining agreement should [defendant] win the election." Id. ¶ 7. She avers that she is "certain that [she] never agreed . . . to enter into an oral agreement" because she "had not been given authority" to do so by defendant, her client. Id. ¶ 8. Lawhon also averred that she has checked her telephone records and found no record of any phone call with Carmody "on or about April 12, 2012, on any subject." Id. ¶ 6. In its response, plaintiff stands by its pleading of an agreement "based upon a meeting that occurred on March 13, 2012, a phone call that took place on April 12, 2012, as well as later extensive dealings between the parties." Pl. Resp. at 10. However, plaintiff has never submitted a declaration by Carmody or anyone else stating under oath that Carmody and Lawhon entered into the alleged oral agreement. Reply at 8-9. Plaintiff also contests Lawhon's citation of phone records, submitting its own evidence that plaintiff received a call on April 12, 2012, from a phone number registered to defendant's headquarters in Oakland.[2] See Rosenthal Decl. Ex. J. Finally, plaintiff points to course-of-conduct evidence purportedly confirming the existence of the claimed oral agreement. See id. Ex. K.[3]

---

[2]In reply, defendant states that over 100 employees work in its Oakland office, and that Carmody was in contact with two other representatives of defendant during March and April of 2012. See Reply at 12 (citing Dkt. #12 ¶¶ 4-6).

[3]In its opposition to this attorneys' fee motion, plaintiff requests that the Court "authorize expedited discovery limited to the subjects of whether an agreement existed between the parties as to the Union's organizing campaign, the election supervised by the Board, and the conduct of the parties' negotiations." Pl. Resp. at 23. The Court's dismissal with prejudice of the SAC precluded exactly this sort of discovery.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

Defendant further argues that Carmody's failure to mention this alleged conversation during the NLRB proceedings supports defendant's position that plaintiff maintained the litigation in bad faith and presented misleading statements to the court. Plaintiff denies that these omissions evidence bad faith.

As outlined above, defendant filed multiple ULP charges with the NLRB, including two that were the subject of an administrative law judge ("ALJ") decision adverse to plaintiff. During the investigation leading to this hearing, Carmody submitted a sworn affidavit to an NLRB investigator. See Def.'s Req. Judicial Notice ("DRJN") Ex.1 (dated Nov. 6, 2012). The Regional Director of the NLRB later submitted this affidavit in proceedings wherein this Court ultimately granted an injunction against plaintiff. See Dkt. #1 at 361-496, Case No. 5:13-cv-00933-CAS; Rubin v. Hosp. of Barstow, Inc., No. ED CV 13-933 CAS (DTBx), 2013 WL 3618802 (C.D. Cal. Aug. 26, 2013). In this affidavit, Carmody described a purported labor relations agreement between the parties, but did not mention any conversation with Lawhon on or around April 12, 2012, or at any time. See generally id. Defendant contends that this omission shows that later allegations of an oral agreement based on the telephone conversation were recently fabricated and therefore made in bad faith. Plaintiff responds that there is no showing that the affidavit, which "was prepared by one of the NLRB's agents, and not Mr. Carmody, was designed to address the circumstances under which the agreement came about. Instead, Mr. Carmody's affidavit focuses upon the **terms** of the agreement." Pl. Resp. at 21 n.7 (emphasis in original).

The affidavit focuses on negotiations between the two parties in the summer and fall of 2012. See generally DRJN Ex. 1. It quotes various provisions of a purported "ad hoc labor relations agreement," see, e.g., id. at 2:5 - 3:4, but does not discuss the negotiation of that purported agreement or any other events before the union election on

---

Additionally, the Court notes that the NLRB recently affirmed an ALJ's finding after an investigation and evidentiary hearing that the purported agreement did not exist. See NLRB Order, 361 N.L.R.B. No. 34, at *1 n.3 ("The parties have no collective-bargaining agreement setting forth an agreed-upon grievance-arbitration procedure."). Regardless, the Court's decision to deny the motion for attorneys' fees moots the reason for plaintiff's discovery request, which is therefore DENIED.

Case 5:13-cv-01063-CAS-DTB   Document 38   Filed 09/18/14   Page 10 of 15   Page ID #:702

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                    'O'

| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
|---|---|---|---|
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

May 10, 2012, see id. at 1:2-8. Therefore, the Court does not find that the affidavit is clear evidence that the oral agreement was alleged in subjective bad faith.

In the subsequent proceeding before an ALJ, plaintiff raised as an affirmative defense that an arbitrator had exclusive jurisdiction over the dispute. Carmody called Lawhon to testify at that hearing, but did not ask any questions about the alleged April 12, 2012 phone call during which Lawhon purportedly entered into an oral agreement. See Lawhon Decl. ¶ 10; see generally Rosenthal Decl. Ex. I. Because Carmody did not testify either, defendant argues, plaintiff presented no evidence of the alleged oral agreement, despite its apparent centrality to plaintiff's defense at the hearing. See Lawhon Decl. ¶ 11. The ALJ ruled against defendants, on September 9, 2013, finding no agreement to arbitrate, oral or otherwise. The NLRB affirmed that decision on August 29, 2014.

Plaintiff responds that there was no point in asking Lawhon about the alleged agreement at the hearing because of her "incessant, bad faith invocation of the attorney client privilege in response to questions that could not possibl[y] invade the privilege." Pl. Resp. at 22. Plaintiff contends that "there was no reason to believe that Ms. Lawhon would acknowledge the facts of the parties' relationship." Id. Although it is true that Lawhon frequently invoked the attorney client privilege during the her examination, plaintiff's contention that Carmody did not inquire about the alleged oral argument because doing so would have been pointless strains credulity. As the transcript plaintiff attached to its response shows, Carmody asked numerous questions attempting to establish the "parties' relationship" in less direct ways. See, e.g., Rosenthal Decl. Ex. I at 526:25 - 527:25 (asking about the parties' course of conduct during the organizing campaign); id. at 528:1 - 532:11 (asking about arbitration of previous disputes between the parties).

Moreover, if it did occur, the telephone conversation allegedly took place between Lawhon and a non-client party (Carmody), such that the attorney client privilege would obviously not apply. The record shows that, in response to Carmody's complaints about Lawhon's invocations of privilege, the ALJ made clear that Carmody could ask questions about conversations with parties other than Lawhon's client. See, e.g., id. at 516:4-22 ("[I]f third parties were involved in these communications, then they're not privileged."); id. at 517:4-11 (similar); id. at 533:15 - 534:4 (colloquy between Carmody and the ALJ

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
|---|---|---|---|
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

over whether a conversation would be privileged). At one point, Lawhon stated, "With respect to subpoenaed documents of communications with counsel, obviously my communications with counsel [Carmody] are not privileged." Id. at 552:3-5. At many points during the examination, Carmody asked about Lawhon's conversations with non-client parties–*including Carmody*–and Lawhon responded without invoking the attorney-client privilege. See, e.g., id. at 512:12 -22 (asking if Lawhon talked to Carmody about the selection of an arbitrator); id. at 518:4-17 (asking if Lawhon had "any conversations at all with any representatives" of defendant with regard to the consent agreement and alluding to conversations between Lawhon and Carmody); id. at 519:14 - 520:10 (asking if Lawhon had post-certification communications with representatives of the hospital, including Carmody); id. at 523:7 - 526:10 (asking Lawhon about May 2012 emails and telephone conversations between her and Carmody); id. at 536:13 - 538:6, 538:20 - 541:14 (questions regarding phone calls between Lawhon and Carmody); id. at 544:2-19 (asking if Carmody and Lawhon discussed organizing campaign literature in a telephone call); id. at 548:3 - 550:23 (asking if Lawhon recalled having a conversation with any representative of defendant regarding six different topics).

In light of the foregoing, plaintiff's contention that Carmody did not ask about the alleged conversation because to do so would have been futile is unpersuasive. But the Court cannot say that counsel's arguably strategic decision not to ask certain questions during the hearing demonstrates that the litigation was conducted in bad faith so as to multiply the proceedings unreasonably or vexatiously.

      b.  Nicole Daro's Purported Admission of an Oral Agreement

Defendant also argues that plaintiff's counsel supported its claim of an oral agreement with a fabricated admission by Nicole Daro ("Daro"), an attorney for defendant. As noted above, plaintiff filed its original complaint on June 13, 2013. The parties agree that on July 3, 2013, Daro and plaintiff's attorney Robert Rosenthal ("Rosenthal") engaged in a telephone conference regarding defendant's intention to file a motion to dismiss, pursuant to Local Rule 7-3. See Daro Decl. ¶ 9; Pl. Resp. at 18. Following this conversation, Rosenthal sent Daro an email memorializing his view of the discussion. Daro Decl. Ex. 2. In this email, Rosenthal stated that he had "repeatedly asked [Daro] on what basis [defendant was] claiming that an agreement did not exist" in light of actions by plaintiff allegedly evincing cooperation that would be unusual in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

absence of an agreement.  See id. at 1.  He also stated that Daro "responded that there was never a meeting of the minds."  Id.

On July 22, 2013, Daro and Rosenthal conducted another telephonic Rule 7-3 conference, this time regarding a motion to dismiss the FAC.  See Daro Decl. ¶ 10; Pl. Resp. at 18.  Daro has declared that "[a]t no time during the July 22, 2013 phone call, nor at any other time, did I concede or make any statements that could be construed as conceding that [defendant] had entered into an oral agreement" with plaintiff.  Daro Decl. ¶ 10.  She further states that Rosenthal "said that there was no need to 'beat a dead horse,' since the parties were already familiar with each other's positions from the earlier Local Rule 7-3 conference" and related briefing.  Id.  On July 25, 2013, Daro and Rosenthal exchanged emails that Daro characterizes as "follow up" to the July 22 conference.  See Daro Decl. ¶ 11.  This correspondence–submitted by defendant and not supplemented or contested by plaintiff–discusses only the parties' hearing and briefing schedule for the motion to dismiss the FAC.  See id. Ex. 3.  Daro asserts that Rosenthal never memorialized his view that Daro had "admitted or conceded that there was an agreement."  Daro Decl. ¶ 11.

In a declaration filed August 5, 2013 in support of plaintiff's opposition to defendant's motion to dismiss the FAC, Rosenthal claimed that, during the July 22, 2013 phone call, Daro

> responded at the time [defendant] went to arbitration, it expected that the Parties would sign the Proposed [Labor Relations Agreement]; however, after the arbitrations occurred, [plaintiff] did not live up to its promises, and as a consequence, [defendant] believed it had the right to claim there was never any sort of agreement in place between the Parties.
>
> Ms. Daro's comments constitute an admission against interest because what Ms. Daro essentially conceded was, "Yes, we entered into the oral agreement, and we were performing it with the expectation that we would be memorializing the oral agreement in a written agreement, but when we concluded that [plaintiff] breached the oral agreement, we thought we could just take the position that we

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

therefore never had the oral agreement." Due to the fact that [defendant] obviously believed there was an oral CBA between the Parties . . . .

Dkt. #12 at 45 (paragraph number omitted). Daro specifically denies having made the statements attributed to her. Daro Decl. ¶ 10.[4] Defendant further argues that, given the context, it is implausible that Daro would have admitted the existence of the oral agreement and that Rosenthal would fail to memorialize that admission in an email, as he had done with Daro's denial of an agreement in the first Rule 7-3 conference.

The Court is essentially confronted with a he-said-she-said scenario. Rosenthal's failure to memorialize the July 22 conversation was perhaps unwise, but it does not prove a complete fabrication. Moreover, defendant takes particular issue with Rosenthal's use of quotation marks in his declaration, but when read in light of the words "what Ms. Daro essentially conceded," the third paragraph of the declaration plausibly stated his *interpretation* of Daro's alleged statement in the second paragraph (however implausible that interpretation may be). It is at least conceivable that Daro made that statement, which is more naturally read as consistent with defendant's position that a "proposed" agreement was discussed but never entered into. Therefore, the requisite subjective bad faith has not been clearly shown.

        2.        Plaintiff's Alleged Mischaracterization of Defendant's ULP Charges

Defendant also claims that plaintiff's opposition to the motion to dismiss the SAC mischaracterized defendant's ULP charges filed with the NLRB in order to evade the Court's ruling that the FAC failed to allege the "clear and unmistakable" waiver required of defendant's statutory right to bring such charges before the NLRB. See Dkt. #16 at 7-8. Plaintiff's opposition argued that the "'clear and unmistakable waiver' analysis does not apply because the ULPs . . . did not contend that [plaintiff] violated any specific *statutory* rights . . .; rather, the ULPs simply alleged that during collective bargaining

---

[4]Defendant also argues that plaintiff's presentation of evidence of conduct from the Rule 7-3 conference violates Fed. R. Evid. 408 and itself shows bad faith. The Court finds this argument unavailing.

Case 5:13-cv-01063-CAS-DTB   Document 38   Filed 09/18/14   Page 14 of 15   Page ID #:706

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
|---|---|---|---|
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

sessions, [plaintiff] did not comply with the *bargaining standard* agreed upon by the Parties." Dkt. #22 at 9 (emphasis in original); see id. at 10 ("[T]he ULPs filed by [defendant] never implicated *statutory* rights." (emphasis in original)). Defendants submit copies of these ULP charges, which allege that plaintiff violated Sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158 and do not mention any agreed-upon bargaining standard. See DRJN Ex. 3. Defendant also points out that, before the filing of plaintiff's opposition, an ALJ had found that plaintiff did violate sections of the NLRA. See ALJ Hearing, 2013 WL 4835039.[5] Defendant argues that the alleged misrepresentation "could not have been inadvertent or merely negligent" because plaintiff's counsel also represented plaintiff in a related case in which the ULP charges were filed as exhibits. Each charge states that the "above-named employer has engaged in and is engaging in unfair labor practices within the meaning of section 8(a), subsections (1) and (5) of the National Labor Relations Act." DRJN Ex. 3. Therefore, defendant contends that, because plaintiff's counsel presumably made a reasonable inquiry into the charges as required by Fed. R. Civ. P. 11, the argument in defendant's opposition evinces bad faith. Plaintiff responds that as a "matter of advocacy," plaintiff had the right to argue that the ULP charges "masked the essence of the Union's objection, which was the notion that [plaintiff] was not complying with the standard developed by the parties for their negotiations." Pl. Resp. at 20.

As indicated by the Court's dismissal with prejudice of the SAC, plaintiff's characterization of the ULP charges is far from persuasive. But as with the other conduct alleged, the Court cannot say that it clearly shows a deliberate attempt to mislead the Court.

4.      Conclusion

While the Court has significant doubts about the existence of the oral agreement alleged by plaintiff, the bar for awarding sanctions for bad faith pursuant to § 1927, or

---

[5]Defendant further argues that even the fact that the NLRB heard the ULP charges on the merits should have put plaintiff on clear notice that NLRA claims had been raised, because the NLRB's jurisdiction is limited to statutory rights under the NLRA. 29 U.S.C. § 160.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 5:13-cv-01063-CAS(DTBx) | Date | September 18, 2014 |
| Title | HOSPITAL OF BARSTOW, INC. v. CALIFORNIA NURSES ASSOCIATION/NATIONAL NURSES ORGANIZING COMMITTEE | | |

otherwise, is a high one. On the record before the Court, it cannot be said that plaintiff's actions in the litigation clearly demonstrate bad faith.

## IV. CONCLUSION

Based on the foregoing, defendant's motion for attorneys' fees as a sanction is DENIED. Plaintiff's request for limited discovery is also DENIED.

IT IS SO ORDERED.

|  | 00 | : | 04 |
|---|---|---|---|
| Initials of Preparer | | | CMJ |